The appellant, Larry Leon Miller, was indicted by the grand jury of Tuscaloosa *Page 1103 
County for sodomy in the first degree, entered a plea of not guilty, was found guilty by the jury of sodomy in the first degree as charged in the indictment, and duly sentenced to be imprisoned in the penitentiary of the State of Alabama for a term of fifty (50) years, and appeals to this Court.
The appellant was at all proceedings in the trial court represented by court-appointed counsel, and is represented in this Court by counsel of his own choice. This case was submitted to this Court on briefs.
The appellant contends that the trial court erred to his prejudice when it allowed the injured party, a four-year-old girl child, and only eye witness to the offense, to testify against him.
The injured party, a four-year-old girl child was called as a witness by the state, whereupon appellant's counsel asked to be allowed a hearing to make a motion that he had discussed with the court. The defendant, his attorney, the attorney for the state, the court, court reporter, and the witness, with her mother, retired to chambers where the following occurred outside the hearing of the jury:
"BY THE COURT:
"Q What's your name?
"A Kim.
"Q Do you know your last name? Is your name just Kim? Have you got a longer name? Do you go by any big, full name?
"A (Witness nodded head affirmatively.)
"Q How old are you?
"A (Witness indicated by holding up four fingers.)
"Q Four years old?
"A (Witness nodded head affirmatively.)
"Q Do you go to kindergarten yet?
"A (Witness shook head negatively.)
"Q You just play?
"A Go roller skating.
"Q You go roller skating? Aren't roller skates real heavy?
"A Uh-huh.
"Q Your legs don't get tired roller skating?
"A (Witness shook head negatively.)
"Q Do you like to roller skate?
"A (Witness nodded head affirmatively.)
"Q Do you ever go to Sunday School?
"A Yeah.
"Q Where do you go to Sunday School?
"A Holt Nazarene.
"Q Do you know who God is?
"A (Witness shook head negatively.)
"Q What do you study in Sunday School?
"A I just color and everything.
"Q Do they talk to you about the Bible?
"A (Witness nodded head affirmatively.)
"Q Do you know what the Bible is?
"A Yeah.
"Q What do they tell you about the Bible?
"A Sometimes they tell me not to stick my hand out the window.
"Q Not to stick your hand out the window? What's going to happen if you stick your hand out the window?
"A You'll get — get hit.
"Q Get spanked?
"A No.
"Q Do you know what happens — do you know what fibbing is?
"A Uh-huh.
"Q Or telling stories?
"A Uh-huh.
"Q Do you know what telling a lie means?
"A Not telling the truth.
"Q What happens — huh?
"A Not telling the truth.
"Q It means not telling the truth? What happens to people that don't tell the truth?
"A Gets a whipping.
"Q Do you know who the Devil is?
"A No.
"Q You don't know who the Devil is?
"A (Witness shook head negatively.)
"Q You don't know anything about the Boogie Man?
"A No, sir.
"Q You never heard of anything about the Boogie Man? *Page 1104 
"A (Witness shook head negatively.)
"Q Do you know why you're up here today?
"A Why?
"Q Huh?
"A Why?
"Q Well, I'm asking you. Do you know?
"A (Witness shook head negatively.)
"Q You don't know why you're up here?
"A Uh-huh.
"Q You're up here to tell me the truth? Huh?
"A (Witness nodded head affirmatively.) "When you talk to us today, are you going to tell everything the truth?
"A (Witness nodded head affirmatively.)
"Q You're not going to tell any stories?
"A (Witness shook head negatively.)
"Q Do you know what to tell the truth means?
"A (Witness nodded head affirmatively.)
"Q What does it mean?
"A It means you tell the truth.
"Q That's about as good an answer as I could give. (To Mr. Pradat:) Do you have any questions?
"EXAMINATION BY MR. PRADAT:
"Q Kim, are you going to tell anything that didn't happen?
"A (Witness shrugged her shoulders, then shook head negatively.)
"Q Are you just going to tell the Court what happened?
"A (Witness nodded her head affirmatively.)
"Q Which should you tell today, the truth or a lie?
"A The truth.
"Q All right. Do you always try to tell the truth?
"A (Witness nodded her head affirmatively.)
"Q Do you get in trouble if you tell a lie?
"A (Witness nodded her head affirmatively.)
"Q You know you're supposed to tell the truth and just the truth today, don't you?
"A (Witness nodded her head affirmatively.)
"EXAMINATION BY MR. CORNWELL:
"Q Kinberly, what is a lie?
"A Like, if you tell a lie, you get a whupping. That means you're not telling the truth so you get a whupping.
"EXAMINATION BY MR. PRADAT:
"Q Kim, if you tell something that didn't really happen, if you make something up, are you telling the truth or are you telling lie?
"A Telling the truth.
"Q No, if you make something up, you say you're telling the truth? You just make it up and it didn't happen?
"A I didn't make it up.
"Q But if you do just make something up. If I tell you that you're ten years old, would that be the truth?
"A Huh-uh.
"Q What would that be?
"A A lie.
"Q Okay.
"EXAMINATION BY MR. CORNWELL:
"Q Kimberly, do you play with other children?
"A (Witness nodded her head affirmatively.)
"Q Do you ever have any make-believe playmates?
"A I just play with children that I know.
"Q Have you ever told the other children that you play with that something happened that didn't happen?
"A (Witness shook her head negatively.)
"Q Do you watch soap operas?
"A Yes.
"Q Are soap operas real?
"A Yes.
"Q Do you tell your mother about what you see on soap operas? *Page 1105 
"A Some of them.
"Q And are the people on soap operas telling the truth?
"A Some of 'em, and some of 'em are telling lies.
"Q And have you ever told your auntie that you went to the doctor when you didn't go to the doctor?
"A I just told her that I went, 'cause I went just one time.
"Q Well, did you ever tell her that — did you ever tell her you went when you didn't go?
"A No.
"Q Was there ever a time when your mother asked you to tell your auntie you went to the doctor?
"A She told her that we went to the doctor for me. That's the only thing she said.
"Q Well, was there an occasion — or was there a time when you or your mother didn't go to the doctor, but you told your auntie that you did?
"A Yeah.
"Q Did you get a spanking?
"A My Mama told auntie that I went to the doctor.
"Q And you didn't actually go to the doctor?
"A (Witness nodded her head affirmatively.)
"Q Well, was there another time when she said that you went to the doctor and you didn't go?
"A She didn't say nothing else after that about the doctor.
"Q How many times have you been to the doctor?
"A Only when I was sick.
"Q What?
"A Only when I was sick.
"MR. PRADAT: When she was sick.
"COURT REPORTER: When she was sick.
"MR. CORNWELL: Oh.
"Q Kimberly, if you made something up, but your mother told you it was all right to tell it, would that [be] a lie?
"A (Witness nodded her head affirmatively.)
"Q Even if Mom says it's okay? What is Mother says it's okay to tell this?
"A It's okay to tell what happened.
"Q Well, is it okay to tell something that didn't happen if your Mother says it's okay to tell it?
"A (Witness shook her head negatively.)
"Q Has your Mother, in fact, told you to say things happened when maybe they didn't happen?
"A She didn't say nothing when she told it. Whenever she tells what happened, she means that I can say it 'cause really what happens is it really happens.
"Q Now, are you talking about the time you were with your Father or are you talking about just any time?
"A Like if I fall or something. Like that.
"MR. CORNWELL: That's all.
"EXAMINATION BY THE COURT:
"Q Kimberly, if you promise me that you're going to tell the truth and nothing but the truth, are you going to do it?
"A (Witness nodded her head affirmatively.)
"Q You're not going to tell any stories?
"A (Witness shook head negatively.)
"Q You're not going to make anything up?
"A (Witness shook head negatively.)
"Q You're going to tell me exactly what happened and nothing else, is that right?
"A (Witness nodded her head affirmatively.)
"Q You're not going to make anything up?
"A (Witness shook her head negatively.)
"Q You're going to tell the truth?
"A (Witness nodded her head affirmatively.)
"Q And only the truth?
"A (Witness nodded her head affirmatively.) *Page 1106 
"Q And you're going to promise me that real solemnly, right?
"A (Witness nodded her head affirmatively.)
"Q And be very straight with me?
"A (Witness nodded her head affirmatively.)
"Q No make-up stories?
"A (Witness nodded her head affirmatively.)
"Q Just the truth?
"A (Witness nodded her head affirmatively.)
"EXAMINATION BY MR. CORNWELL:
"Q Kimberly, is there something you can tell that's not the truth and not quite a lie, but it's okay to tell it?
 "MR. PRADAT: I'd object to that. That even confuses me, Your Honor, and I'm 27 years old. Hold on a minute, Kim.
"THE WITNESS: It is not okay to tell a lie.
"THE COURT: You say it's not okay to tell a lie?
"THE WITNESS: (Witness shook her head negatively.)
 "MR. CORNWELL: We have no further questions, Your Honor. We would enter an objection to the witness testifying.
 "THE COURT: Well, I'm going to overrule the objection based on Jackson v. State, also McElroy §§ 94.01 (5), 94.02 (3), 94.02 (2). There are a number of other cases, but in the Jackson case, of course, that was a four-year-old child. The Court is satisfied, after having seen the child and talked with the child, that the child is an intelligent child and understands the difference between truth and lies and I feel that the witness meets the standards of competency sufficient to allow her to testify in Court. The weight of her testimony, of course, would be for the jury.
"(Thereupon, the oath was administered to the witness before leaving Chambers.)"
The state's direct examination and redirect examination of the witness before the jury consumed about three and one-half pages of the record. The appellant's cross-examination and recross-examination before the jury consumed about thirty pages of the record. The appellant's counsel was allowed to cross-examine the witness and was not limited in its scope. The trial court was satisfied, after having seen and talked with the four-year-old child, that she was an intelligent child, and understood the difference between truth and lies, and was of the opinion that the witness meets the standards of competency sufficient to testify in the case. We have read the testimony of the child contained in the record. This Court does not have the privilege of personal observation of the child as did the trial judge. We have examined the record and do not find sufficient evidence to indicate to us that the trial judge abused his discretion by allowing the four-year-old girl child to testify.
In the case of Jackson v. State, 239 Ala. 38, 193 So. 417
Justice Bouldin observed, "The exclusion of a witness having good sense, however tender the age, is disfavored because it would often close the door to prove crimes against children themselves." Our Courts have declined to set an age limit for children of very young age, and have placed the burden on the trial judge to determine, within his discretion, whether the child is intelligent enough to qualify as a witness. Code of Alabama, 1975, Sec. 12-21-165 provides, as follows:
"Incompetent witnesses.
 "(a) Persons who have not the use of reason, such as idiots, lunatics during lunacy and children who do not understand the nature of an oath, are incompetent witnesses.
 "(b) The court must, by examination, decide upon the capacity of one alleged to be incompetent from idiocy, lunacy, insanity, drunkenness or infancy."
We hold that under the facts in this case the trial court did not err to the prejudice of the appellant when the four-year-old girl child was allowed to testify. McElroy's *Page 1107 Alabama Evidence, Third Edition, 94.01 (5); Code of Alabama, 1975, Sec. 12-21-165, supra; Roberson v. State, Ala.Cr.App.,384 So.2d 864; Certiorari Denied, Ala., 384 So.2d 868; Jacksonv. State, 239 Ala. 38, 193 So. 417; Rogers v. State, 264 Ala. 500, 88 So.2d 685.
We have searched the record and are of the opinion that reversible error does not appear. The judgment of the trial court is due to be and is hereby affirmed.
The foregoing opinion was prepared by Honorable JOSPEH J. MULLINS, a retired Circuit Judge, serving as a Judge of this Court; his opinion is hereby adopted as that of the Court.
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur.