[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 493 
The appellant, Charles Randall Stewart, was convicted of murder, made capital because it was committed during the course of a burglary and a kidnapping. In a vote of 10 to 2, the jury recommended death. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
Several issues raised by the appellant on appeal were not objected to at trial. While this will not bar our review in a case involving the death penalty, it will weigh against any claim of prejudice. See Ex parte Kennedy, 472 So.2d 1106
(Ala.), cert. *Page 494 
denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). Rule 45A, A.R.App.P., states:
 "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review . . . whenever such error has or probably has adversely affected the substantial right of the appellant."
"[This] plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' "United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046,84 L.Ed.2d 1 (1985), quoting United States v. Frady,456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982).
 I
The appellant initially argues that his constitutional protection against double jeopardy was violated when he was tried and convicted of six counts of capital murder. The appellant was indicted for four counts of murder during the course of a burglary (§ 13A-5-40(a)(1)) and two counts of murder during the course of a kidnapping (§ 13A-5-40(a)(4)). He was convicted on all six counts.
It appears from the court's conversation with counsel prior to trial that the court expected the state to elect which counts to present to the jury. The trial court stated:
 "I've read the indictment, and I believe it's going to be a question at the close of the evidence of the State having to elect, rather than to quash it at this time. I think the counts are good, but I think they are duplicitous. I don't think they could travel both ways. I think they would have to elect at the close of this — well, the State's evidence or the Defendant's.
 "Mr. Giddens [Defense Counsel]: Would they have to, Judge, elect on one of the six?
 "The Court: I think that they have to elect on two out of the first four counts of the indictment as I read the indictment."
After this occurred, nothing further was said about the state's electing between counts. The six indictments show that the appellant was charged with four counts of intentional murder during the course of a burglary and with two counts of murder during the course of a kidnapping. In fact, the prosecutor alluded to the fact that the indictments were alternative ways of charging the appellant after the court's dialogue above. The four indictments charging murder during the course of a burglary merely detailed alternative ways of proving the elements of burglary. The two indictments charging murder during the course of a kidnapping alleged alternative methods of establishing the crime of kidnapping. We realize that "the purpose of the [alternative] counts was not to charge two or more separate offenses, but to vary the description of one and the same offense based upon one and the same transaction." Floyd v. State, 486 So.2d 1309, 1313 (Ala.Cr.App. 1984), aff'd, 486 So.2d 1321 (Ala. 1986), cert. denied,479 U.S. 1101, 107 S.Ct. 1328, 94 L.Ed.2d 179 (1987). However, we do not have here a case like Floyd. In Floyd, the appellant wasnot convicted of all eight counts of capital murder but was convicted of only one count of capital murder. In the present case, the appellant was convicted on all six counts of capital murder. We do agree with the court in Floyd that the state would not have been required to elect which alternative counts under § 13A-5-40(a)(1) and § 13A-5-40(a)(4) would be presented to the jury. Alternative methods of proving the same crime "[do] not constitute separate offenses." Ex parte State [v.Sisson], 528 So.2d 1159, 1162 (Ala. 1988). However, the appellant's conviction on all six alternative counts cannot stand. Thus, according to Sisson, the convictions on three counts of murder during the course of a burglary and on one count of murder during the course of kidnapping must be vacated. A person cannot be convicted for the same crime twice because to do so would violate the principles of double jeopardy. Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084,109 L.Ed.2d 548 (1990); Blockburger v. United States, 284 U.S. 299,52 S.Ct. 180, *Page 495 76 L.Ed. 306 (1932). (For an in depth discussion applying the principles of Sisson and Blockburger to facts similar to those in this case, see Judge Bowen's special concurrence opinion in King v.State, 574 So.2d 921 (Ala.Cr.App., 1990).)
However, the appellant could correctly be convicted for one count of capital murder as defined in § 13A-5-40(a)(1) (murder committed during the course of a kidnapping) and one count of capital murder as defined in § 13A-5-40(a)(4) (murder committed during the course of a burglary), Code of Alabama 1975, because convictions for these two offenses do not violate the principles of double jeopardy. As the United States Supreme Court stated in Grady v. Corbin, supra, "To determine whether a subsequent prosecution is barred by the Double Jeopardy Clause, a court must first apply the traditional Blockburger test."Grady, 110 S.Ct. at 2090. Does one offense "requir[e] proof ofa fact which the other does not?" Blockburger, 284 U.S. at 304,52 S.Ct. at 182. (Emphasis added.) Section 13A-5-40(a)(1) requires proof of a burglary and § 13A-5-40(a)(4) requires proof of a kidnapping.
The inquiry, however, does not cease there. If theBlockburger test is satisfied, "The critical inquiry [then] is what conduct the State will prove, not the evidence the State will use to prove that conduct." Grady, 110 S.Ct. at 2093. The two counts, one for intentional murder committed during a burglary and one for intentional murder committed during a kidnapping, pass the Blockburger test.
This court in Jackson v. State, 516 So.2d 726 (Ala.Cr.App. 1985), remanded on other grounds, 516 So.2d 768 (Ala. 1986), appeal dismissed on return to remand, 516 So.2d 774
(Ala.Cr.App. 1987), faced a similar issue. The defendant inJackson was convicted for two counts of capital murder, one count of murder during the course of a rape, and one count of murder made capital because two persons were murdered. Judge Patterson, in holding that the two convictions did not violate the double jeopardy principles announced in Blockburger, stated:
 "The murder of [victim 1] was an element of both offenses, but each offense also required proof of an element that the other did not. Proof of the rape-intentional killing count did not require proof of the killing of [victim 2.] Proof of the double-murder count did not require proof of the rape of [victim 1]. We therefore conclude that under the test established in Blockburger, appellant was properly indicted and convicted for two separate and distinct capital offenses 'notwithstanding a substantial overlap in the proof offered to establish the crimes,' Iannelli v. United States, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293, n. 17, 43 L.Ed.2d 616 (1975)."
516 So.2d at 763. Therefore, the appellant's convictions on one count of violating § 13A-5-40(a)(1) and on one count of violating § 13A-5-40(a)(4), are constitutional.
Regardless of what we do with this issue, it is clear that, technicalities aside, the jury intended that the appellant be found guilty of capital murder. We are reluctant to dismiss the decision of the court as to either aspect of capital murder. In any event, if error has occurred, the appellant can die but once.
For the reasons stated above, we remand this case to the Circuit Court for Talladega County so that that court may vacate three of the appellant's convictions for murder during the course of a burglary and one conviction for murder during the course of a kidnapping. One conviction under §13A-5-40(a)(1) and one conviction under § 13A-5-40(a)(4) have been proven and will stand. The counts that are to be vacated are to be determined by the trial court. Our remand of this case for the court to vacate four of the appellant's convictions does not affect the appellant's sentence of death, because the two capital offenses — §§ 13A-5-40(a)(1) and13A-5-40(a)(4) — support a sentence of death.
 II
We also find it necessary to remand the appellant's case on one additional ground. The appellant maintains that he was denied *Page 496 
a fair and impartial trial because the spouse of a member of his jury sat on the grand jury that indicted him. The record is very sketchy in this regard. The juror pointed out to counsel during voir dire that his wife had been on the grand jury since September of that year. The appellant was tried in October, after he was indicted in September.
The fact that a juror's wife sat on the grand jury that indicted the appellant is not a statutory ground for striking that juror for cause. See § 12-16-150, Code of Alabama 1975. A juror may correctly be excused when he has an opinion or bias so fixed that it prevents him from trying the case fairly and impartially. Knop v. McCain, 561 So.2d 229 (Ala. 1989); Exparte Rutledge, 523 So.2d 1118 (Ala. 1988). The dialogue in the instant case between counsel and the juror is very limited. Because this is a case involving the death penalty and because we find it necessary to remand this case on other grounds, we further remand this case to the circuit court with instructions to hold a hearing on these allegations and to question the juror as to his knowledge of the case prior to the trial. The court should make factual determinations as to whether the juror's wife did in fact sit on the grand jury that indicted the appellant and whether the juror had any knowledge of the facts surrounding the case from his spouse and, if so, whether any knowledge he may have had affected his ability to be impartial.
In the interest of judicial economy, we will address the remaining issues that the appellant raises in his brief.
 III
The appellant argues that there was insufficient evidence to find him guilty of murder committed during the course of a burglary and murder committed during the course of a kidnapping.
The state's evidence tended to show that the appellant shot his ex-wife in the head on July 16, 1990. The appellant and the victim were involved in a custody dispute over their six-year-old son around the time of the shooting. Approximately three weeks before the shooting, the victim received permanent custody of the child. On July 6, 1990, the victim married Phillip Lang, a former employee of the appellant's. On that same day, the victim and the appellant had an appointment at a lawyer's office to sign some papers concerning the sale of their house. When the appellant arrived, he appeared agitated and refused to sign the papers. When he was driving away, he rammed his automobile into the automobile of the victim's husband.
On the morning of the shooting, the appellant and Ricky Brooks went to Birmingham in a truck rented by the appellant. The appellant talked of his ex-wife and son frequently during the day. Both the appellant and Brooks were drinking. Brooks testified that the appellant told him that he was going to get his son if he had to shoot his ex-wife. Brooks was concerned about what the appellant told him that day and called his wife three different times during the day. Mrs. Brooks called the Talladega Sheriff's Department that afternoon and told them about the appellant's conversation with her husband.
The appellant and Brooks arrived back in Talladega County around 5:30 p.m. They stopped at a mutual friend's house, where Brooks entered the house and did not come out. He told the friend to tell the appellant that he had passed out. The appellant then left the residence alone. Brooks testified that the appellant had a gun with him on the day of the murder.
The appellant then went to his ex-wife's house trailer that she shared with Phillip Lang. He drove through the backyard, knocking over shrubs and other things in his path. The appellant got out of his truck and entered the house trailer uninvited. At this time his son was playing outside nearby. After several minutes, the boy went into the trailer, where he saw his mother fully clothed on the sofa with her head covered in blood. The victim told the boy to run next door to his step-grandparents' house and have them call the police. The appellant told him not to do so. The boy ran next door, and his step-grandparents *Page 497 
called the police. When the boy went back outside, he saw the appellant push the victim off of the porch of the trailer. At this time his mother had no clothes on except socks. The appellant told the victim to get into the truck. She asked where they were going. He said that "it didn't matter." The appellant then grabbed her hair, raised his gun, and shot her in the back of the head. He then picked up his son and ran into a nearby field. Police arrived within minutes and found the appellant waiting in a field. The victim's body was found outside the trailer and a gun was recovered nearby.
The appellant maintains that there was no evidence to find him guilty of kidnapping and burglary. As to the kidnapping charge, the appellant contends that there was no evidence that he intended to abduct, terrorize, or inflict physical harm on the victim.
"In evaluating the sufficiency of the evidence to convict the appellant, we view the evidence in 'the light most favorable to the state,' as the jury may have interpreted it." Jenkins v.State, [Ms. 90-1044, February 28, 1992], 1992 WL 71035, * 4 (Ala.Cr.App. 1992). "A person commits the crime of kidnapping in the first degree if he abducts another person with intent to . . . [i]nflict physical injury upon him, or to violate or abuse him sexually." Section 13A-6-43(a)(4), Code of Alabama 1975. To abduct means to "restrain a person with intent to prevent his liberation by either: a. Secreting or holding him in a place where he is not likely to be found, or b. Using or threatening to use deadly physical force." Section 13A-6-40(2), Code of Alabama 1975.
As this court stated in Owens v. State, 531 So.2d 2
(Ala.Cr.App. 1986), remanded on other grounds, 531 So.2d 21
(Ala. 1987), "proof of intent, necessary to convict under §13A-6-43, 'must be found by the jury and may be inferred from the facts and circumstances attending the whole transaction.'Doss v. State, 28 Ala. App. 168, 180, 123 So. 237, 248 (1929) [cert. denied, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712 (Ala. 1929)]." 531 So.2d at 13.
 "The necessary intent may be inferred from the acts of the accused. 'Intention is manifested by the circumstances connected with the perpetration of the offense. . . .'
 "We fully recognize the rule that intent, as an element of crime, is seldom susceptible of proof by direct evidence, and that it may be inferred from a series of acts and circumstances."
Jensen v. Sheriff, White Pine County, 89 Nev. 123, 508 P.2d 4,6 (1973) (citation omitted). See also People v. Morgan,27 Mich. App. 388, 183 N.W.2d 617, 618 (1970).
In the present case, the state's evidence tended to show that the appellant had beaten the victim about the head with a gun prior to forcing her out of the trailer and attempting to get her into his truck. The victim was nude at the time that she exited the trailer and evidence established that the appellant shoved the victim out onto the porch in front of the trailer. There was also the testimony of Ricky Brooks concerning the appellant's conversations and actions that day. There was sufficient evidence for the jury to conclude that the appellant intended to abduct, terrorize, and inflict serious physical harm on the victim. Newton v. State, 540 So.2d 800 (Ala.Cr.App. 1988).
The appellant also contends that there was no evidence to convict him of burglary.
 "(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
"(1) Is armed with . . . a deadly weapon; or
 "(2) Causes physical injury to any person who is not a participant in the crime."
Section 13A-7-5, Code of Alabama 1975.
Mr. Aubrey Benefield, a neighbor of the victim's and a relative of Phillip Lang's, testified that on the afternoon of the shooting a truck almost ran over him while on its way to the victim's trailer. *Page 498 
Benefield said that the individual who exited the truck did not knock on the door but "[j]arred the door open and went on in." There was also evidence that the appellant and the victim were no longer married and that, in fact, she was now married to Phillip Lang.[1] The appellant's intent at the time of the offense was a question for the jury. See Doss, supra. There was clearly sufficient evidence to find the appellant guilty of burglary.
Furthermore, as the state correctly argues in brief, even if the appellant was legitimately on the premises initially, he could still be guilty of burglary when he "unlawfully remained" on the premises after he beat the victim about the head with a gun, at which point any privilege he might have had to remain on the premises was terminated. As Judge Bowen stated inGentry v. State, 595 So.2d 548 (Ala.Cr.App. 1991):
 "This Court adheres to the interpretation of the phrase 'unlawfully remains' found in Moss v. State, 536 So.2d 129 (Ala.Cr.App. 1988); Minshew v. State, 542 So.2d 307, 311 (Ala.Cr.App. 1988); and Johnson v. State, 473 So.2d 607 (Ala.Cr.App. 1985), that the fact that the victim terminated the defendant's license or privilege to remain on the premises can be inferred where a struggle took place and the victim was beaten."
595 So.2d at 551.
 IV
The appellant further argues that the prosecution violated the defendant's discovery request by withholding material evidence. Specifically, the appellant maintains that he was not given the laboratory results performed on the victim's clothing and that he was not given the contents of an inculpatory statement made by him to the police when he was first arrested for the murder.
Directly prior to trial, the state realized that the red T-shirt the victim was wearing before her death had not been analyzed to determine the blood type of the blood on the shirt. Dennis Surrett, who was in charge of the items recovered from the victim's trailer, testified that he told defense counsel on November 5, 1990, that the shirt was about to be sent for further testing and that if he wanted to view the shirt he would have to do so immediately. By further testing, the prosecution hoped to prove that the victim was wearing the shirt when she was beaten. The state maintained that this theory was important to the state's case.
The shirt was sent to the Forensic's Department in Birmingham for luma-lite testing. Warren Stewart, a forensic investigator who assisted in the luma-lite testing of the shirt, described the test as follows:
 "Luma-lite operates very much like a laser does. It causes certain stains or chemicals or powders to fluoresce. And what it is, is a high powered light source, is what it amounts to. It's not a laser. What it has in it is a light bulb, 300 watt halogen-type light bulb. Goes through a filter, 459 meter filter. You shine it on the object you are wanting to look at, and the stains will fluoresce once you look through them with a orange-colored filter.
". . . .
 "Once you shine the light onto the article, you will see a fluorescence. The fluorescence is then photographed."
Stewart further stated that the luma-lite makes blood stains on dark clothing easier to see.
The report with the results of the luma-lite test was dated November 26, 1990, and was given to defense counsel on November 28, 1990, the third day of the trial. Phyllis T. Rolan, who performed the luma-lite test, testified that she gave her results to the prosecution on November 28, 1990. The prosecutor stated that he received the report only minutes before he gave it to defense counsel. At this time the court *Page 499 
allowed the jury to see the photographs made using the luma-lite. However, the experts were not allowed to state any conclusions to the jury. There is no evidence in the record that the prosecution failed to disclose the results of the luma-lite test. Indeed, the expert who performed the test stated in court that she gave the results to the prosecution on the same day that the prosecutor gave them to defense counsel. Moreover, no error exists here because the appellant himself testified on direct examination that the victim had her clothes on when he beat her. Thus, any possible error which might have existed was harmless. Rule 45, A.R.App.P.
The appellant further argues in his reply brief that the results of the luma-lite test should not have been shown to the jury because it is a new scientific test and no expert at trial testified to its general acceptance and reliability in the scientific community. Essentially, the appellant maintains that there was no testimony concerning the steps articulated inFrye v. United States, 293 F. 1013 (D.C. Cir. 1923), regarding novel scientific evidence.
After considering the expert description of the luma-lite test, we believe that the Frye case does not apply. "In Exparte Dolvin, 391 So.2d 677 (Ala. 1980), the court specifically held Frye to be inapplicable when expert evidence is in the nature of physical comparisons as opposed to scientific tests or experiments." Handley v. State, 515 So.2d 121, 180
(Ala.Cr.App. 1987).
The luma-lite test performed in this case does not deal with comparing scientific data or experiments such as deoxyribonucleic acid (DNA) testing or voice print analysis. See Ex parte Perry, 586 So.2d 242 (Ala. 1991), and Frye, supra. Nor does the luma-lite test deal with any physical comparisons such as the dental comparisons involved in Handley and Dolvin.
The luma-lite test, from our evaluation of its description, involves the spraying of chemicals onto an object and the photographing of the chemical reaction with a camera. In essence, it aids the jury in seeing something that was already there but that was enhanced with the aide of the luma-lite. TheFrye test is inapplicable to the test in the present case and the lack of expert testimony as to the factors articulated inFrye was not error. See Dolvin, supra.
We note that prior to the admission of any evidence concerning tests like those conducted in the instant case, the state must establish a sufficient predicate. The expert's qualifications must be established and the conditions under which the test was conducted must be shown. See C. Gamble,McElroy's Alabama Evidence § 490.01(1) (4th ed. 1991). This was done in the instant case.
The appellant further contends that the state did not disclose the contents of an oral statement made by the appellant to the first policeman on the scene. The first law enforcement official on the scene was Dallas Davenport, an off-duty sheriffs deputy. The evening after Davenport testified, the prosecutor stated that he called Davenport because he had some questions to ask him. The prosecutor stated that it was at this time that he learned that the appellant had made an unsolicited remark to Davenport when he first arrived on the scene. The appellant had said, "A man has got to do what a man has to do." The next morning the prosecutor informed defense counsel of the existence of this statement. At this time the trial court ruled that this statement could be used only in the state's rebuttal case. However, the statement was not introduced at the guilt phase but was introduced at the sentencing phase. As in the case of the test results, there is no violation of the discovery order here because it appears from the record that the prosecutor made defense counsel aware of the statement as soon as he was made aware of it himself.
 V
The appellant next contends that the trial court erred when it did not sequester part of the jury venire before the entire jury was selected. The appellant argues that § 12-16-9(a) Code of Alabama 1975, was violated and that, therefore, he should be granted a new trial. Section 12-16-9(a) states: *Page 500 
 "(a) If the accused and his counsel and also the prosecuting attorney, in any prosecution for a capital felony consent thereto in open court, the trial court in its discretion may permit the jury trying the case to separate during the pendency of the trial, whether the jury has retired or not."
(Emphasis added.)
The following occurred during the voir dire:
 "The Court: Due to the nature of this case, the law gives you an unequivocal right to have this jury remain together until a verdict is reached. You can waive this right if your attorney waives it with you. Do you want the jury to remain together?
"Mr. Stewart: Yes, sir.
"The Court: All right. That's your right.
"Mr. Stewart: Is that all?
 "The Court: That's after they are selected, of course.
(Emphasis added.)
The record reflects that the jury selection was nearly complete at 4:30 p.m. on the first day of the proceedings. The trial court recessed court until the next day and told the venire not to read any newspapers, watch any television, or listen to the radio. The venire was not sequestered. The trial court's actions were correct.
According to § 12-16-9(a), a capital defendant has a right to have the jury sequestered only during the pendency of thetrial. "[T]here is some authority to the effect that a member of a jury panel becomes a 'juror' only after being sworn, with the result that specific rules or statutes relating to the sequestration of jurors have been held not applicable to prospective members of a jury panel." Annot., Separation ofJury in Criminal Case Before Introduction of Evidence — ModernCases 72 A.L.R.3d 100, 103 (1976).
This court in Ellington v. State, 51 Ala. App. 12,282 So.2d 360, 363 cert, denied, 291 Ala. 778, 282 So.2d 366 (1973), defined at what point a trial commences: "A trial is deemed to begin when a jury of twelve is sworn, and charged with the prisoner, and after evidence has been given." Thus, the questioning of the jury venire is not during the "pendency of the trial," and, therefore, § 12-16-9(a) was not violated here.
 VI
The appellant next contends that the trial court erred in excusing four potential jurors without cause. One member of the panel was excused because a family member was sick. Two others were excused because they ran their own businesses, which closed when they were away. The record does not contain the reason why the fourth member of the panel was excused. When the member gave his excuse to the trial court, the record states that the "conversation was inaudible." However, the court ruled that the excuse was sufficient. Initially, we observe that no objection was made at trial when the four panel members were excused from the venire.
Section 12-16-63, Code of Alabama 1975, states, in pertinent part:
 "(b) A person who is not disqualified for jury service may be excused from jury service by the court only upon a showing of undue hardship, extreme inconvenience or public necessity."
"[T]he trial court is vested with broad discretion in the excusal of prospective jurors." Crawford v. State,377 So.2d 145, 150 (Ala.Cr.App.), aff'd, 377 So.2d 159 (Ala. 1979), rev'd on other grounds, 405 So.2d 702 (Ala. 1981). See also Stewartv. State, 245 Ala. 511, 17 So.2d 871 (1944). A prospective juror may correctly be excused because of the illness of a family member. Nolen v. State, 35 Ala. App. 249, 45 So.2d 786
(1950), cert. denied, 253 Ala. 565, 45 So.2d 792 (1950); Finneyv. State, 10 Ala. App. 39, 65 So. 98 (1914). A prospective juror may also be excused because service will create an extreme business hardship. Nolen, supra. "The excuse offered by [the last juror] is not shown, but it is stated, that it was held good by the court. We must presume it was for a 'reasonable or proper cause,' in which case the court had the authority to excuse him." Plant v. *Page 501 State, 140 Ala. 52, 87 So. 159, 160 (1904). The trial court committed no error in excusing the four prospective jurors.
 VII
The appellant next contends that he was unduly prejudiced when he was brought into the courtroom in front of the jury venire in handcuffs. The appellant objected and moved for a mistrial. The court held a hearing on his motion. No evidence was presented that any of the veniremembers had seen the appellant walk into the courtroom in handcuffs. There was a possibility that the venire had seen the appellant. The handcuffs were taken off the appellant moments after he entered the courtroom. There was also evidence that the appellant had formulated a plan to escape during the trial. After the hearing on the appellant's motion, the court asked the veniremembers whether anything had occurred that morning that had prejudiced them against the appellant. No juror responded.
 "It is a normal and regular as well as a highly desirable and necessary practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this. This is necessary to prevent an escape and possible injury to others in an escape attempt. . . . No prejudice was shown and the court did not err in refusing to grant a mistrial."
United States v. Leach, 429 F.2d 956, 962 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151
(1971). " 'A sheriff who is charged with the responsibility of safely keeping an accused has a right in his discretion to handcuff him to and from the courtroom when the handcuffs are removed immediately after he is taken into the courtroom.' "Johnson v. State, 542 So.2d 341, 343 (Ala.Cr.App. 1989), quoting Evans v. State, 338 So.2d 1033, 1037 (Ala.Cr.App. 1976), cert. denied, 348 So.2d 784 (Ala. 1977).
"The fact that some of the jurors may have seen [the] appellant in handcuffs was not so inherently prejudicial as to require a mistrial without more." United States v.Figueroa-Espinoza, 454 F.2d 590, 591 (9th Cir. 1972). See alsoCommonwealth v. Davis, 466 Pa. 102, 851 A.2d 642 (1976). "Where there has been only a brief and inadvertent confrontation between a shackled person and one or more members of the jury, this is likely to be viewed as an insufficient showing of prejudice to require reversal of a conviction." 3 Lafave and Israel, Criminal Procedure § 23.2(d) (1984) and cases cited therein. See also Annot., 90 A.L.R.3d 17 (1979) and cases cited therein. No reversible error occurred here.
 VIII
The appellant next contends that he was unduly prejudiced when one of the investigators on the case testified from his seat at the prosecution table. Investigator Jimmy Kilgore of the Talladega County Sheriffs Department was excepted from the rule requiring the exclusion from the courtroom of all witnesses from the case and was allowed to sit at the counsel table with the prosecutor. Investigator Kilgore had already testified and was back at the counsel table when the prosecution was questioning another witness about photographs taken and items recovered from the victim's trailer. Prior to the items being received into evidence, the prosecution needed to ask four more questions of Kilgore so that the complete chain of custody of the items could be established. The trial court allowed the prosecutor to ask the questions to Investigator Kilgore while he was seated at the prosecution's table. No objection was made at that time. Thus, to warrant reversal here, any alleged error must amount to plain error. Rule 45A, A.R.App.P.
The exclusion of Investigator Kilgore from the rule was not error. "The court, in its discretion, may except a particular person from a general order of exclusion." C. Gamble,McElroy's Alabama Evidence § 286.01 (4th ed. 1991). See also Annot., 87 A.L.R.3d 238 (1978). The appellant was not prejudiced by allowing Kilgore to answer the questions at counsel table. The jury knows that police officers investigate *Page 502 
cases and assist the prosecution. No plain error occurred here.
 IX
The appellant next contends that the trial court erred in allowing evidence of prior misconduct, not the subject of the indictment, to be received into evidence at trial. Specifically, the appellant maintains that evidence that he rammed into the car of the victim's husband was received into evidence for the sole purpose of prejudicing him. Generally, evidence of prior bad acts not charged in the indictment is not admissible at trial. C. Gamble, McElroy's Alabama Evidence § 69.01(1) (4th ed. 1991). However, there are exceptions to this general exclusionary rule where evidence of prior offenses may be used as substantive evidence of the appellant's guilt. These instances include, but are not limited to: physical capacity, res gestae, knowledge, intent, plan or scheme, and motive and identity. McElroy's § 69.01 et seq.
In the present case, the state argues that the prior misconduct was admissible for the purposes of establishing the appellant's intent at the time he killed his ex-wife. "If the accused is charged with a crime that requires a prerequisite intent, then prior criminal acts are admissible to show that he had the necessary intent when he committed the now charged crime." McElroy's § 69.01(5). " '[E]vidence of other crimes may be admitted in the trial of the now-charged crime when it is relevant to the now-charged crime and tends to prove an elementof the now-charged crime which is at issue.' " White v. State,527 So.2d 1349, 1350 (Ala.Cr.App. 1988) (emphasis added). The appellant, by contending that he accidentally shot the victim, placed his intent at the time of the murder at issue.
In State v. Featherman, 133 Ariz. 340, 651 P.2d 868 (Ariz.App. 1982), the defendant was charged with murder, and evidence that the defendant had hit the victim in the head with a baseball bat two months prior to the murder was received into evidence at trial. The appellate court, in upholding the decision of the trial court, stated:
 "In the present case the evidence of the defendant's hostility to his victim demonstrated by the baseball bat incident . . . is directly relevant to his intent the night she was killed. Intent is frequently shown by evidence of other criminal acts of the same character."
Featherman, 651 P.2d at 873.
Evidence that the appellant hit the victim's husband's automobile 10 days before the murder was correctly received into evidence and was relevant to show the appellant's intent on the day of the murder. See White, supra; Willis v. State,449 So.2d 1258 (Ala.Cr.App. 1984). See also McCormick onEvidence § 190 (4th ed. 1992).
 X
The appellant further argues that he was prejudiced when the State failed to disclose that one of its witnesses had made a deal with the State. Specifically, he maintains that Ricky Brooks, the individual who was with him on the day of the shooting, made a deal with the prosecution for his testimony.
Our review of the record does not support the appellant's allegations. The following occurred during the testimony of Ricky Brooks:
 "Q [Prosecutor] — Did you tell me Sunday night that you [were] thinking about not coming to court?
"A — Do what?
 "Q — Did you tell me Sunday night you [were] thinking about not coming to court up here, that you [were] just going to leave?
 "A — Yeah. I asked what could be done if I said the 'F' word to you and just didn't come up here.
"Q — Just said 'F' me and not come?
"A — Yeah. I asked what could be done.
 "Q — And then didn't I tell you, 'Either tell me you will be back up here tomorrow, or I'll have to see about getting a material warrant, witness warrant, to assure your presence here'?
"A — Yeah." *Page 503 
There is absolutely no evidence in the record that Brooks was charged with any crime. Indeed, it appears that the witness was told only what would happen to him if he chose not to honor the subpoena and not to appear in court. Thus, any evidence of an alleged deal would have been inadmissible.
 XI
The appellant next contends that the prosecutor violated Rule 12.3(a), A.R.Crim.P., when he named the foreman of the grand jury who returned the indictment on the appellant. During the prosecutor's opening statement he read the indictment to the jury. The indictment contained the following phrase, "Robert Rumsey, as District Attorney, the 29th Judicial Circuit. And endorsed on the back thereon by Travis McKay, who is foreman, as a true bill, who is foreman of that grand jury."
Rule 12.3(a), A.R.Crim.P., pertains to the oath taken by the foreman of the grand jury and has no application to a reading of the indictment in open court.
 XII
The appellant next contends that the trial court erred in allowing the appellant's seven-year-old son to testify at trial. The appellant contends that he was not competent to take the witness stand because of his age. "There is no age at which competency is presumed. A four-year old can testify in cases other than sexual abuse or sexual exploitation if he or she has first been determined to be competent." Price v. State,590 So.2d 381, 382 (Ala.Cr.App.), aff'd, 590 So.2d 383 (Ala. 1991).
In the present case the trial court questioned the child before he was allowed to testify. It appears from the record that the child was very articulate for a seven-year-old. In fact there was no objection to his testimony during the trial. We find no error in the trial court's acceptance of the child as a competent witness. Cole v. State, 443 So.2d 1386
(Ala.Cr.App. 1983); Miller v. State, 391 So.2d 1102
(Ala.Cr.App. 1980).
 XIII
The appellant next contends that the prosecution engaged in numerous instances of misconduct during the guilt phase of the proceedings, which, he argues, resulted in his denial of a fair trial. The appellant cites numerous instances were the prosecution's conduct prejudiced him. In the majority of the instances during the guilt phase of the proceedings, no objections were made. Thus, we must evaluate these instances under the plain error doctrine. Rule 45A, A.R.App.P.
The appellant maintains that the prosecutor led witnesses and, in effect, testified himself. After reviewing the instances cited by the appellant, we fail to see how any of the instances have "adversely affected the substantial right[s] of the appellant." Rule 45, A.R.App.P.
The appellant also contends that the prosecutor committed reversible error in his closing argument during the guilt phase. We have reviewed all of the complained-of instances and find no reversible error. "In order for a prosecutor's comments made during argument before the jury to require a new trial, the entire trial must have been so infected with unfairness as a result of these comments that the appellant was denied due process." Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464,2472, 91 L.Ed.2d 144 (1986).
Furthermore, the trial court instructed the jury not to consider arguments of counsel as evidence in the case. "[I]t is unlikely that any [alleged] impropriety in the State's argument could have affected the jury's verdict." Henderson v. State,583 So.2d 276, 287 (Ala.Cr.App. 1990), aff'd, 583 So.2d 305
(Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1268,117 L.Ed.2d 496 (1992).
 XIV
The appellant next contends that the trial court erred in limiting the evidence he was allowed to present at the guilt phase. Specifically, he maintains that he was not allowed to present evidence as to why he *Page 504 
acted the way he did on the day of the murder. However, he fails to cite any specific instances during the guilt phase where he was not allowed to present such evidence. Moreover, the record reflects that the appellant presented evidence concerning the marital problems between himself and the victim, the victim's affair with Phillip Lang, and the custody dispute over their son.
 XV
The appellant next contends that the trial court's instructions during the guilt phase were flawed. He argues that the court's instruction on reasonable doubt violated the United States Supreme Court's holding in Cage v. Louisiana,498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).
 "In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole. Francis v. Franklin, 471 U.S. 307, 316, 105 S.Ct. 1965, 1972, 85 L.Ed.2d 344 (1985). . . . It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on proof below that required by the Due Process Clause."
Cage, 111 S.Ct. at 329.
The trial court in Cage gave the following instruction concerning reasonable doubt:
 " 'If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even when the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty.' "
Cage, 111 S.Ct. at 329.
After the United States Supreme Court's decision inCage, that court denied certiorari in Gaskins v. McKellar, ___ U.S. ___, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991). Justice Stevens, commenting on the denial of certiorari in Gaskins, placed much emphasis on the fact that the reasonable doubt instruction in question in Gaskins did not contain the phrase "give rise to a grave uncertainty."
We must not view the instruction in isolation but must evaluate it with the charge as a whole. Williams v. State,538 So.2d 1250 (Ala.Cr.App. 1988); Lambeth v. State, 380 So.2d 923
(Ala.), on remand, 380 So.2d 925 (Ala.Cr.App. 1979), writ denied, 380 So.2d 926 (Ala. 1980). In the present case the court gave the following instruction concerning reasonable doubt:
 "[T]he Defendant has entered a plea of not guilty. Therefore, the burden of proof is on the State of Alabama, and the Defendant is always presumed to be innocent. The fact that he's been arrested and indicted and brought before the bar of justice does not create any presumption against him at all. But he comes into the court clothed with this presumption of innocence, and this presumption of innocence remains with him throughout the trial as an evidentiary fact in his favor. That is as a matter of evidence which must be considered by you until it is overcome by evidence, which proves his guilt to each and every one of you beyond a reasonable doubt, and to a moral certainty. As I've said, the burden is *Page 505 
on the State to prove his guilt beyond a reasonable doubt and to a moral certainty of any of the offenses charged in the indictment before you could convict him.
 "Now, you will want to know what a reasonable doubt is. When I say the State has the burden of proving guilt beyond a reasonable doubt and to a moral certainty, that does not mean that the State must prove the alleged crime beyond every imaginable or speculative doubt or beyond all possibility of mistake, because that would be impossible. A reasonable doubt means an actual substantial doubt. It could arise out of the testimony in the case or it could arise from a lack for which a reason can be assigned. And the expression 'to a moral certainty' means practically the same thing as beyond a reasonable doubt, because if you are convinced to a point where you no longer have a reasonable doubt, then you are convinced to a moral certainty."
The reasonable doubt instruction was thorough and did not mislead the jury. The instruction did not violateCage. The use of some of the terminology the Court found offensive in Cage does not automatically constitute reversible error. Jenkins v. State, [Ms. 90-1044, February 28, 1992], 1992 WL 71035 (Ala.Cr.App. 1992); Herbert Williams v. State, [Ms. 89-633, September 20, 1991], 1991 WL 197836 (Ala.Cr.App. 1991);McMillian v. State, 594 So.2d 1253 (Ala.Cr.App. 1991); Earhartv. State, 593 So.2d 119 (Ala.Cr.App. 1991); LutherWilliams v. State, 601 So.2d 1062 (Ala.Cr.App. 1991), aff'd, [Ms. 1901682, March 6, 1992] (Ala. 1992); Adams v. State,587 So.2d 1265 (Ala.Cr.App. 1991).
We have reviewed appellant's other allegations concerning the court's instructions in the guilt phrase and find no error.
 XVI
The appellant raises the following issues concerning the penalty phase. The appellant initially contends that the trial court erred in allowing evidence of a prior offense. The prosecution introduced evidence that the appellant had been convicted in 1979 of flogging while masked.[2]
 " 'Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements.' "
Dill v. State, 600 So.2d 848, 364 (Ala.Cr.App. 1991), aff'd, 600 So.2d 872 (1992), quoting § 13A-5-45(d), Code of Alabama 1975. It is clear from this statute that the "usual strict rules of evidence are not applicable to sentencing hearings."Stephens v. State, 580 So.2d 11, 23 (Ala.Cr.App. 1990), aff'd,580 So.2d 26 (Ala. 1991), cert. denied, ___ U.S. ___,112 S.Ct. 176, 116 L.Ed.2d 138 (1991). Further, the state had the burden of proving any aggravating circumstances that might apply. To establish the aggravating factor of § 13A-5-49(2), Code of Alabama 1975, which is the prior conviction of a defendant for a felony involving the use or threat of violence to another person, the state must introduce evidence of the prior conviction. See Stephens, supra; Hallford v. State,548 So.2d 526 (Ala.Cr.App. 1988), aff'd, 548 So.2d 547 (Ala. 1989), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989). The trial court acted correctly in allowing evidence of the appellant's previous conviction for flogging while masked.
 "It is abundantly clear that Alabama's sentencing process permits 'consideration of the "character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death". . . .' Lockett v. Ohio, 488 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)."
Jacobs v. State, 361 So.2d 640, 653-54 (Ala. 1978), cert. denied, 439 U.S. 1122, 99 S.Ct. 1034, 59 L.Ed.2d 83 (1979). *Page 506 
 XVII
The appellant next contends that several comments made by the prosecutor during the penalty phase resulted in his denial of a fair sentencing hearing. As previously stated, "In order for a prosecutor's comments made during argument before the jury to require a new trial, the entire trial must have been so infected with unfairness as a result of these comments that the appellant was denied due process." Darden v. Wainwright,106 S.Ct. at 2472.
Initially, the appellant contends that the prosecutor incorrectly argued to the jury that two aggravating circumstances had been established as a matter of law. However, the prosecutor's statement is a correct statement. The jury found the appellant guilty of murder during the course of a burglary and kidnapping. The two aggravating circumstances of burglary and kidnapping had already been proven to exist "beyond a reasonable doubt" during the guilt phase of the trial. See Jenkins, supra. The prosecutor's comment was not error.
The appellant also contends that the prosecutor erred in arguing that there was no evidence that the appellant was substantially impaired at the time of the offense. The prosecutor argued in his opening statement during the penalty phase that he thought that none of the statutory mitigating circumstances existed. The prosecutor was arguing his impressions of the evidence; no error exists here. " 'Whatever is in evidence is considered subject to legitimate comment by counsel. The prosecutor has the right to present his impressions from the evidence. He may argue every matter of legitimate inference and may examine, collate, sift, and treat the evidence in his own way.' " Luther Williams, ___ So.2d at ___ (citation omitted).
Furthermore, whether the appellant was so intoxicated as to negate the intent necessary was a question for the jury. The jury was instructed on the defense of impairment. No error occurred here.
The appellant next contends that the prosecutor erred in telling the jury not to let sympathy, emotions, or compassion affect its decision. The United States Supreme Court has ruled that a jury may be instructed not to be swayed by "mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." California v. Brown, 479 U.S. 588,107 S.Ct. 837, 93 L.Ed.2d 934 (1987). The Court stated that such an instruction serves the important purpose of "confining the jury's imposition of the death sentence by cautioning it against reliance on extraneous emotional factors." Californiav. Brown, 479 U.S. at 548, 107 S.Ct. at 840. The prosecutor's comments did not result in any error.
The appellant raises several other issues concerning the conduct of the prosecutor that we have reviewed and that we conclude are not supported by the record.
 XVIII
The appellant further contends that the trial court erred in its instructions to the jury during the penalty phase. Specifically, he maintains that the court erred in telling the jury that the sentence they imposed was "merely a recommendation." This is not error. See Luther Williams, supra. However, as the state points out, we can find no place in the record where the court or the prosecution referred to the jury's sentence as "merely a recommendation." There were some remarks that the verdict was a "recommendation"; however, this is a correct statement of Alabama law. Section 13A-5-47, Code of Alabama 1975.
The appellant further argues that the court's instructions on aggravating circumstances were flawed. Specifically, the appellant maintains that the court erred at one point in its instruction by saying that the jury could consider any evidence presented that was "relevant to the existence of anyaggravating or mitigating circumstances." The appellant also contends that the court's instructions on aggravating circumstances did not inform the jury that any findings of aggravating circumstances had to be unanimous. *Page 507 
Initially, we observe that the appellant failed to object to the trial court's instructions during the penalty phase. In fact, counsel stated that he was satisfied with the instructions. While this will not bar our review in any case involving the death penalty, it will weigh against any claim of prejudice. See Ex parte Kennedy, supra.
The trial court gave the following instructions on aggravating circumstances:
 "The law of the State provides a list of aggravating circumstances which may be considered by a jury in recommending punishment, if the jury is convinced beyond a reasonable doubt and to a moral certainty from the evidence that one or more or any of such aggravating circumstances exist in this case. The same definition that I gave you concerning reasonable doubt apply in this matter. If the jury is not convinced beyond a reasonable doubt based upon the evidence that one or more of such aggravating circumstances exist, then the jury must recommend that the defendant's punishment be life imprisonment without parole, regardless of whether there are any mitigating circumstances in this case.
 "Now, the law provides a list of aggravating circumstances, and the list has eight statutory aggravating circumstances. And there has been argued to you and noted to you and we are concerned with only two out of this list besides any aggravating circumstances you might find from the facts of the case itself. One is number two, the Defendant was previously convicted of another capital offense or a felony involving the use of threats or violence to a person. Number four provides that the capital offense was committed while the Defendant was engaged or was an accomplice in the commission of or an attempt to commit or flight after committing or attempted to commit rape, robbery, burglary, or kidnapping. And if these have been proven to you beyond a reasonable doubt and to a moral certainty, they would constitute aggravating circumstances.
 "Now, the fact that I instruct you on such aggravating circumstances or defined them, does not mean that the circumstances or any other aggravating circumstances have been proven beyond a reasonable doubt in this matter, because that is a matter for you to decide under the circumstances.
 "Now, we go to the question of mitigating circumstances, and the law on those, they are set out as follows: the evidence upon which a reasonable doubt about an aggravating circumstance may be based is both the evidence you heard in the guilt stage of the trial and the evidence you heard in this sentencing stage. The Defendant does not have to disprove anything about an aggravating circumstance. The burden is solely upon the State to prove such circumstance beyond a reasonable doubt. A reasonable doubt about an aggravating circumstance may arise from all of the evidence or form any part of the evidence. You may not consider any aggravating circumstance, other than the circumstance that you have been instructed about. And you may not consider an aggravating circumstance unless you are convinced beyond a reasonable doubt by the evidence of the existence of the aggravating circumstance.
". . . .
 ". . . . And you, the jury, are to decide what weight or value is to be given to the particular circumstances in determining the sentence in the light of all the other circumstances in this case. You must do that in the process of weighing the aggravating circumstances against the mitigating circumstances."
The appellant contends that the trial court erred in instructing the jury that they could consider any evidence in aggravation (see the emphasized portion above). However, this was one isolated comment in a very long and thorough instruction to the jury. The court instructed the jury that it could consider only the aggravating circumstances as to which the court had instructed it. As this court has stated on previous occasions, we do not review a jury instruction in isolation but must consider *Page 508 
the charge as a whole. See Williams, 588 So.2d 1250
(Ala.Cr.App. 1988); Lambeth, supra. When we view the remark by the court in the context of the entire instruction, we find no plain error.
Furthermore, any possible error which may have occurred from the trial court's failure to use the term "unanimous," did not amount to plain error. The court's use of the term "the jury" implies that any findings of aggravating circumstances had to be unanimous. We must evaluate instructions like a reasonable juror may have interpreted them. See Francis v. Franklin,471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 844 (1985). No plain error occurred here.
For the reasons stated in parts I and II above, this case is remanded to the Circuit Court for Talladega County for proceedings consistent with this opinion.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.
[1] We note that this court recently stated that a husband or a wife may be guilty of burglarizing the other spouse's residence when the husband or wife has no possessory interest in the spouse's residence. White v. State, 587 So.2d 1218 (Ala.Cr.App. 1990), aff'd, 587 So.2d 1236 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992).
[2] This offense is no longer in our Criminal Code.