[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1108 
This is a capital murder case. The facts are fully and accurately reported in the opinion of the Court of Criminal Appeals, 472 So.2d 1096; therefore, we briefly summarize the facts here only to the extent necessary to our holding.
On December 24, 1980, petitioner entered the home of eighty-six-year-old Mrs. Annie Laura Orr in Montevallo. Petitioner was accompanied by Darrell Grayson. (See Grayson v.State, [7 Div. 3, Jan. 31, 1984] (Ala.Crim.App. 1984), affirmed, [MS. 83-756, Feb. 15, 1985] (Ala. 1985).) One of the men was armed with a pistol. Inside Mrs. Orr's home the two men assaulted Mrs. Orr and placed a pillowcase over her head. They then wrapped her head with masking tape so that her head resembled that of a mummy. Mrs. Orr was repeatedly raped and terrorized with threats and gunfire. Finally, petitioner and Grayson left the house with two decks of playing cards, Mrs. Orr's wallet, and a small amount of money. Mrs. Orr slowly suffocated to death.
Petitioner was convicted of capital murder and sentenced to death. The Court of Criminal Appeals affirmed his conviction and overruled his application for rehearing. We granted certiorari as a matter of right pursuant to Rule 39 (c), Ala. R.A.P. Petitioner presents seven issues for our review.
 I
Relying on Bufford v. State, 382 So.2d 1162 (Ala.Crim.App. 1980), petitioner contends that during the sentencing phase, the judge's instructions to the jury regarding aggravating circumstances included an offense which constituted an element of the indictment and, as a result, he contends he was being punished twice for the same offense. We disagree.
As the Court of Criminal Appeals correctly held, Bufford was effectively overruled in Kyzer v. State, 399 So.2d 330, 334-39
(Ala. 1981), and Beck v. State, 396 So.2d 645 (Ala. 1980); Dobardv. State, 435 So.2d 1338 (Ala.Crim.App. 1982), affirmed, Ex parteDobard, 435 So.2d 1351 (Ala. 1983), cert. denied, ___ U.S. ___,104 S.Ct. 745, 79 L.Ed.2d 203 (1984).
Kennedy contends that the effect of Bufford cannot be overruled because the language of Code 1975, § 13A-5-31, mandates that a death sentence be imposed only if certain crimes are committed "with aggravation." The trial court found the following aggravating circumstances: (1) The capital felony was committed while the defendant was engaged in the commission of a rape, robbery, and burglary; and, (2) the capital felony was especially heinous, atrocious, and cruel, especially when compared to other capital felonies.
We have reviewed the findings made by the trial judge and hold that the evidence supports the judge's determination that two aggravating circumstances were present in this case.
Finally, Kennedy contends that even though Bufford has been overruled, the instant offense was committed before it was overruled; consequently he contends that if Bufford is not applied, the result is an ex post facto violation. Again, we find this argument to be without merit.
As the Court of Criminal Appeals indicated, the Bufford court's misinterpretation of Code 1975, § 13A-5-31, was corrected inKyzer v. State, supra. It is a settled principle that the constitutional ban on ex post facto laws applies strictly to legislative acts and does not extend to changes in law effected by judicial decisions. This principle was expressly stated in the following Supreme Court cases: Marks v. United States,430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); Frank v. Mangum,237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915); Ross v. Oregon,227 U.S. 150, 33 S.Ct. 220, 57 L.Ed. 458 (1913); Calder v. Bull,3 U.S. 386, 3 Dall 386, *Page 1109 1 L.Ed. 648 (1798). Specifically, it was declared in Frank v.Mangum, supra, that the constitutional prohibition against state enactment of ex post facto laws is, "as its terms indicate, directed against legislative action only, and does not reacherroneous or inconsistent decisions by the court."237 U.S. at 344, 35 S.Ct. at 593. (Emphasis added.)
 II
Petitioner next contends that the trial judge's instruction defining "aiding and abetting" violated the eighth and fourteenth amendments, which prohibit the imposition of the death penalty on one who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed. He cites Enmund v. Florida, 458 U.S. 782,102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). We find that Enmund is not applicable to the case at hand.
Prior to instructing the jury regarding the meaning of "aiding and abetting," the trial judge familiarized the jury with the meaning of "intent to kill." He instructed the jury as follows:
 "The intent to kill must be independent of the act of committing the burglary itself but the two, the burglary and the intent to kill, must co-exist before this defendant could be convicted of the capital offense, as I have mentioned to you, and that is the highest offense included in this indictment."
It was after the judge had thoroughly instructed the jury on the need for finding that Kennedy intended to kill that the trial judge instructed the jury regarding the complicity statute and the definition of "aiding and abetting." The jury was instructed as follows:
 "Now, ladies and gentlemen of the jury, I will charge you as to Title 13A-2-23 of the 1975 Code of Alabama entitled complicity.
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of a crime, one, he procures, induces or causes the other person to commit the offense or, two, he aids or abets such other person in committing the offense or, three, having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make.
 "Aiding and abetting comprehends all assistance rendered by acts or words of encouragement or support, actual or constructive, to render assistance should it become necessary and no particular acts are necessary." (Emphasis added.)
The Court of Criminal Appeals, in addressing this issue, held:
 "Kennedy's sentence of death does not violate Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368
[73 L.Ed.2d 1140] (1982), holding that the Eighth Amendment prohibits the imposition of the death penalty on one who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed.
 "In imposing the death penalty, the trial judge made specific factual findings that Kennedy `participated in every aspect of the capital offense,' and that he `beat, raped, and intentionally killed' Mrs. Orr. The evidence shows that before entering the house Kennedy had given his pistol to Grayson. The trial judge repeatedly instructed the jury that an intent to kill was an essential element of the capital offense.
 "In reviewing a capital conviction in which the accused concedes at trial that he participated in the underlying felony but denies that he committed or aided and abetted the intentional killing, this Court must apply a two-part test. `To affirm a finding of a "particularized intent to kill," the jury must be properly charged on the intent to kill issue, and there must be sufficient evidence from *Page 1110 
which a rational jury could conclude that the defendant possessed the intent to kill.' Ex parte Raines, 429 So.2d 1111, 1113 (Ala. 1982). Both prongs of this test are satisfied in this case.
 "Kennedy's speculation that the jury found him guilty even though they did not believe he committed or participated in the killing is totally unacceptable. The jury was properly instructed on the relevant law, and it must be presumed that they followed the judge's instructions. Marshall v. Lonberger, [459] U.S. [422] 103 S.Ct. 843, 853-854, n. 6 [74 L.Ed.2d 646] (1983).
 "`A crucial assumption underlying that system (of trial by jury) is that juries will follow the instructions given them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury, and even more pointless for an appellate court to reverse a criminal conviction because the jury was improperly instructed.' Parker v. Randolph, 442 U.S. 62, 73
[99 S.Ct. 2132, 2139, 60 L.Ed.2d 713] (1979) (White, J., dissenting)."
We adopt the holding of the Court of Criminal Appeals as being the law of this case.
 III
Petitioner's third contention is that the trial judge's instructions during the sentencing phase of the trial had the effect of misleading the jury into believing that voluntary intoxication was immaterial to the determination of his sentence. We disagree.
The specific instruction which Kennedy contends to be misleading is as follows:
 "In evaluating the testimony presented at this sentence hearing, you are to abide by the same rules of law which I have given you concerning the evaluation of testimony presented during the guilt phase of the trial."
Having carefully reviewed this charge in the context in which it was heard by the jury, we find no error. We agree with the Court of Criminal Appeals' finding that the above charge merely instructed the jury to apply the same rules and guidelines in ascertaining the factual truth from the evidence presented in the sentencing phase as they applied in the guilt phase. Furthermore, at the sentencing hearing, although the trial judge did not specifically instruct the jury on intoxication, he did instruct the jury that they could consider "a substantially lessened or substantially diminished capacity" as a mitigating factor.
 IV
Kennedy's fourth contention is that under Brady v. Maryland,373 U.S. 83, 835 S.Ct. 1194, 10 L.Ed.2d 215 (1963), he was denied due process because the trial judge refused to grant his request for production of the written confessions of co-defendant Grayson.
To establish a Brady violation, Kennedy must demonstrate (1) that the prosecution suppressed evidence; (2) that that evidence was favorable to him or exculpatory; and (3) that the evidence was material. United States v. Blasco, 702 F.2d 1315, 1327 (11th Cir. 1983), citing Ogle v. Estelle, 641 F.2d 1122 (5th Cir. 1981).
Here, as the Court of Criminal Appeals found, favorable or exculpatory evidence was not suppressed:
"MR. DENSON [Defense Counsel]: . . .
 "Back several weeks ago when we filed the motion to produce the co-defendant's statement, the Honorable Judge mentioned he would examine it in camera even though he was going to deny the motion to produce, he would examine them in camera. Has the Court had a chance to examine them?
 "MR. WILLIAMS [Prosecutor]: Mr. Denson, for the record, I don't believe — I don't remember that that was in the Court's decision or certainly I didn't make a notation, plus I don't think it is part of the court order plus we let you read the co-defendant's statement.
"MR. DENSON: I glanced at it. I didn't read it. *Page 1111 
 "MR. WILLIAMS: You had it put in your hand and appeared to read it.
 "MR. DENSON: I had it in my hand and glanced at it briefly."
Grayson's statements were reviewed in camera by the trial court and were reviewed by the Court of Criminal Appeals. After carefully re-examining Grayson's statements we find that this evidence is not in any way favorable to Kennedy. Having found the evidence to be neither suppressed nor favorable to Kennedy, we find his contentions under Brady are without merit.
 V
Kennedy's fifth contention is that the trial judge erroneously charged the jury that Kennedy could be convicted of capital murder on the basis of criminal negligence. After reviewing the charge in its entirety, we find no error in the trial court's jury instructions.
The trial court, in defining mental culpability, read Code 1975, § 13A-2-2, to the jury verbatim, thereby defining each mental state along the spectrum from "intentional" to "criminal negligence." Each definition was relevant to the various verdict options except "criminal negligence." The definition of "intentionally" was relevant to the court's instructions on the "intent to kill" element of the capital offense. The definition of "knowingly" was relevant to the court's instructions on first degree burglary and theft. The definition of "recklessly" was relevant to the court's instructions on the lesser included offense of manslaughter. While the charge on criminal negligence served no purpose except to provide a contrast to the other definitions, the court's inclusion of this definition in the jury charge is not reversible error because here the instructions as a whole present the case properly, in that the trial court repeatedly instructed the jury that it must find the killing to have been intentional in order to render a verdict of capital murder. This same result was reached in Harris v. State,412 So.2d 1278 (Ala.Crim.App. 1982), where the court found as follows:
 "The charge should not have been given. Clemmons v. State, 167 Ala. 20, 52 So. 467 (1910); Amos v. State, 73 Ala. 498 (1883). However, the fact that isolated instructions are erroneous or misleading is no ground for reversal where the instructions as a whole present the case properly. Johnson v. State, 81 Ala. 54, 1 So. 573 (1886). Where a portion of the oral charge is erroneous or misleading, the whole charge may be looked to, and the entire charge must be construed together to see if there be reversible error. Gosa v. State, 273 Ala. 346, 139 So.2d 321
(1962); Baugh v. State, 218 Ala. 87, 117 So. 426
(1928); Stewart v. State, 381 So.2d 214
(Ala.Cr.App.), cert. denied, 381 So.2d 220
(Ala. 1979); Standard v. State, 51 Ala. App. 176, 283 So.2d 627 (1973); Barber v. State, 11 Ala. App. 118, 65 So. 842 (1914).
 "Looking to the entire oral charge, we find that the objectionable character of the portion objected to was cured. . . . The misleading quality of the court's instruction is self-correcting when considered in the context of the entire oral charge when the charge is considered as a whole and when each instruction is considered in connection with the others. We think it a reasonable assumption that the jury took a common sense view of the instructions and gave to them their plainly apparent meaning."
412 So.2d at 1281. See Bighames v. State, 440 So.2d 1231, 1234
(Ala.Crim.App. 1983); Bragg v. State, 453 So.2d 756, 759
(Ala.Crim.App. 1984).
Furthermore, we note that at the time these instructions were given, Kennedy made no objection. While this failure to object does not preclude review in a capital case, it does weigh againstany claim of prejudice. Bush v. State, 431 So.2d 563, 565 (Ala.), cert. denied, ___ U.S. ___, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983); cf. Ex parte Harrell, 470 So.2d 1309 (Ala. 1985). As this Court pointed out in Harrell, the plain error doctrine is one which this *Page 1112 
Court may apply if we find substantial prejudice, even though no objection was made at trial.
 VI
Kennedy's sixth contention is that because of prejudicial pretrial publicity, the trial court's denial of his motion for change of venue constituted reversible error. This allegation is totally unsupported by the record and, therefore, we find, as did the Court of Criminal Appeals, no error.
In Ex parte Magwood, 426 So.2d 929 (Ala.), cert. denied,462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983), this Court examined the standard of review utilized when reviewing a trial court's ruling on a motion for change of venue and the defendant's burden of proof to show he was actually prejudiced. This Court held as follows:
 "Absent a showing of abuse of discretion, the ruling of the trial court on a motion for change of venue will not be disturbed. Speigner v. State, 367 So.2d 590 (Ala.Cr.App. 1978), cert. denied, 367 So.2d 597 (Ala. 1979). The defendant has the burden of showing that he will be unable to receive an impartial trial and an unbiased verdict at the present locale. Speigner, supra.
 "Absent a showing of actual prejudicial influence upon the jury, the trial court was not in error in refusing to grant a motion for change of venue. Dolvin v. State, 391 So.2d 666 (Ala.Cr.App. 1979), aff'd, 391 So.2d 677 (Ala. 1980)."
In Anderson v. State, 362 So.2d 1296 (Ala.Crim.App. 1978), the Court of Criminal Appeals held as follows:
 "Except in the situation where there is a showing of `inherently prejudicial publicity which has so saturated the community, as to have a probable impact upon the prospective jurors', the trial court's primary responsibility in dealing with allegedly prejudicial pretrial publicity is whether, as a result of such publicity, it is reasonably unlikely that the defendant can secure a fair and impartial trial. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); United States v. Jones, 542 F.2d 186 (4th Cir. 1976); McWilliams v. United States, 394 F.2d 41
(8th Cir. 1968).
 "In Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975), the United States Supreme Court recognized that:
 "`Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
 "`"To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."' (Citations omitted.)
 "`At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality."'
 "Recently the Supreme Court affirmed the principles expressed in Murphy.
 "`Petitioner's argument that the extensive coverage by the media denied him a fair trial rests almost entirely upon the quantum of publicity which the events received. He has directed us to no specific portions of the record, in particular the voir dire examination of the jurors, which would require a finding of constitutional unfairness as to the method of jury selection or as to the character of the jurors actually selected. But under Murphy, extensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render *Page 1113 
a trial constitutionally unfair. Petitioner in this case has simply shown that the community was made well aware of the charges against him and asks us on that basis to presume unfairness of constitutional magnitude at his trial. This we will not do in the absence of a "trial atmosphere utterly corrupted by press coverage".' Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977).
 "The proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination."
362 So.2d at 1298-99.
To establish prejudice, Kennedy introduced evidence of a telephone survey in which thirty out of one hundred people surveyed felt as though the two men arrested were probably guilty. In addition, Kennedy contends that there was a "strong probability of prejudice" because the crimes involved were rape, murder, and robbery of an elderly and prominent white woman by a black man on Christmas Eve in the "small-town atmosphere" of Shelby County. As the Court of Criminal Appeals found, no newspaper articles or other examples of media coverage were introduced into evidence. Thus, this was not a case in which the "trial atmosphere was utterly corrupted by press coverage." In addition, the telephone survey was conducted in Shelby County, which has a population of approximately 66,000 residents. Because only 100 people were questioned, this is not sufficient to demonstrate extensive knowledge in the community and is not sufficient to warrant a finding that the trial was constitutionally unfair. Dobbert v. Florida, 432 U.S. 282,97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). Finally, here as in Dobbert, the defendant pointed "to no specific portions of the record, in particular the voir dire examination of the jurors, which would require a finding of constitutional unfairness as to the method of jury selection or as to the character of the jurors actually selected." Dobbert, supra, at 303, 97 S.Ct. at 2303.
 VII
Finally, Kennedy contends that the admission into evidence of the transcript of his tape-recorded statement, without production of the tape itself, erroneously violated the best evidence rule. We disagree.
Here, as the Court of Criminal Appeals indicated, the officer who listened to the confession at the time of the recording testified that the transcript accurately reflected the conversation. Hawkins v. State, 443 So.2d 1312 (Ala.Crim.App. 1983); Beech v. State, 439 So.2d 1331 (Ala.Crim.App. 1983). We find that the Court of Criminal Appeals carefully examined and reviewed this issue and we find no error in its application of the law to the facts at hand.
 VIII
In accordance with Beck v. State, 396 So.2d 645 (Ala. 1980), and Code 1975, § 13A-5-53, we find no error in the Court of Criminal Appeals' affirmance of the imposition of the death penalty in this case. Pursuant to Beck, we find that Kennedy did violate Code 1975, § 13A-5-31 (a)(4), which is a capital offense; similar crimes are being punished capitally throughout the state,Lindsey v. State, 456 So.2d 383 (Ala.Crim.App. 1983),456 So.2d 393 (Ala. 1984); Clisby v. State, 456 So.2d 86 (Ala.Crim.App. 1982), affirmed in part and remanded in part, 456 So.2d 95 (Ala. 1983).
Having carefully reviewed all issues raised and having independently examined the record for error, we hold that the judgment of the lower court is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
 ON APPLICATION FOR REHEARING