Willard Kilpatrick, the appellant, was convicted of the murder of Benny Paul Smith and was sentenced to 30 years' imprisonment. He raises three issues on this appeal of that conviction.
On the evening of July 11, 1990, the appellant and Danny Williams were drinking beer with Donna Goutzoulis, Smith's former girlfriend. When the appellant got up to leave about 11:00 p.m., he saw that the tires on his truck had been slashed. Suspecting that Smith was responsible, the appellant asked Ms. Goutzoulis to show him the way to Smith's house. He asked Danny Williams to drive him there. Before leaving, the appellant got his gun from his truck.
The appellant, Williams, and Ms. Goutzoulis left about 2:30 a.m. When they arrived at Smith's house a short time later, the appellant left Williams and Ms. Goutzoulis in the car while he walked to the front of the residence and pounded on the door. Receiving no answer, he went to the side door, where he continued knocking. Eventually, Smith came to the door.
The appellant did not testify at trial. In a statement given to Albertville police, he claimed that he told Smith that he wanted to be paid for his tires. The two men argued and Smith, reaching for his pocket, came toward the appellant. The appellant then fired his gun. He stated that he was aiming for Smith's legs and that he did not mean to kill him.
Ms. Goutzoulis, called as a State's witness, testified that she could hear nothing of what was said between the appellant and Smith. In addition, she could see very little of the encounter because she was nearsighted and was not wearing glasses. She saw that the appellant and Smith were standing close together, but she did not see a weapon in either man's hands. She heard a gunshot and when the appellant returned to the car she asked, "Did you hurt him?" The appellant replied, "I hit him."
Danny Williams testified as a defense witness. He stated that he saw Smith advance toward the appellant, reach for his pocket, and retrieve a knife or other shiny, pointed object. He then saw the appellant pull out a pistol and fire downward at Smith.
 I
The appellant claims that the trial court erred by denying his motion for new trial on the ground that the State failed to disclose an agreement with a prosecution witness in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963).
Prior to trial, the defense filed a motion to require the State to "reveal any agreement entered into between the State and any prosecution witness that could conceivably influence his testimony." C.R. 134. The trial court granted this motion. C.R. 339-40. The State revealed no agreement with any witness before trial.
At trial, however, the prosecution elicited on direct examination of Ms. Goutzoulis that she had been promised she "would not be prosecuted in connection with this incident if [she] came and gave testimony." R. 376. The following occurred on cross-examination of Ms. Goutzoulis: *Page 467 
 "Q. [defense counsel] Donna, have you been promised immunity from prosecution in testifying in this case?
"A. Yes.
"Q. Who promised you that immunity?
 "A. [Marshall County District Attorney] Mr. Thompson.
"Q. Do you have that promise in writing?
"A. No.
 "Q. . . . You had been promised immunity from prosecution; is that right?
"A. Yes.
 "Q. But nobody told you what you were receiving immunity from; is that correct? "A. Yes.
 "Q. Okay. So somebody is promising not to prosecute you for something you don't know what they are going to prosecute you for?
"A. Yeah, I guess so. I'm sorry —
 "Q. Let me ask it another way, Donna, did you do anything — did you shoot Benny Paul Smith?
"A. No." R. 387-88, 402.
At the motion for new trial, the assistant district attorney stated that although Ms. Goutzoulis thought she had been promised immunity, that was not, in fact, the case. He explained:
 "[D]ue to the facts of this case, there was insufficient evidence, first of all, to charge her with anything. I mean we just could not make a prima facie case against her or the Williams boy in this case.
 "Secondly, there were some outstanding warrants with the City of Albertville on an old fine that she had not paid but, as you well know we were going through the Interstate Witness Detainer Act, or whatever it's called, in order to get her up here because she was in Florida. We had to furnish the witness the plane flight and all of that. The only way that we could make her come up here in the event of having to go through that process is if we guaranteed that she would not be prosecuted on any crime to come back into the State to testify in this case. That's one of the requirements of that act. . . .
". . . .
 "[T]here was a felony indictment against her for theft by deception. And . . . [s]he was not served with that indictment because of the problem with the Witness Detainer Act. Because we could not get her up here and serve her with that indictment." R. 737-38, 740.
In its order denying the motion for new trial, the court specifically found that "the reliability of [Ms. Goutzoulis] was not determinative of the guilt or innocence of the defendant," that her testimony was cumulative, and that "the knowledge of such 'agreement' by the defendant would not have resulted in a different outcome of the trial." C.R. 340. Although we condemn the State's failure to comply with constitutional and court-ordered mandates, we agree with the trial court that, had the agreement been disclosed, the result of the proceeding would not have been different.
To establish a Brady violation, the appellant must show "(1) that the prosecution suppressed evidence; (2) that that evidence was favorable to him or exculpatory; and (3) that the evidence was material." Ex parte Kennedy,472 So.2d 1106, 1110 (Ala.), cert. denied, 474 U.S. 975,106 S.Ct. 340, 88 L.Ed.2d 325 (1985). "Impeachment evidence . . . as well as exculpatory evidence, falls within the Brady rule."United States v. Bagley, 473 U.S. 667, 676,105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985).
"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. See alsoEx parte Womack, 541 So.2d 47, 63 (Ala. 1988);Thompson v. State, 581 So.2d 1216, 1220 (Ala.Cr.App. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 868,116 L.Ed.2d 774 (1992); McMillian v. State, 594 So.2d 1253
(Ala.Cr.App. 1991), remanded on other grounds, 594 So.2d 1288
(Ala. 1992). *Page 468 
The suppression of the agreement not to serve Ms. Goutzoulis with a felony indictment and not to prosecute her on outstanding misdemeanor warrants did not undermine confidence in the outcome of the trial, and was, therefore, not "material" in the constitutional sense for three reasons: first, because the testimony of Ms. Goutzoulis was not critical to a finding of the appellant's guilt; second, because the defense mounted a substantial challenge to the credibility of Ms. Goutzoulis on other grounds; and third, because Mrs. Goutzoulis testified that she had been promised immunity from prosecution.
In Napue v. Illinois, 360 U.S. 264, 269,79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959), the Supreme Court observed that "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." In the present case, whether the jury believed Ms. Goutzoulis was not "determinative of the appellant's guilt or innocence." Although Ms. Goutzoulis was an "eyewitness," in the sense that she was physically present at the scene of the homicide, her claim that she saw little and heard none of the encounter between the appellant and the victim made her testimony essentially neutral. The appellant's conviction did not in any real sense depend upon the jury's assessment of Ms. Goutzoulis's credibility. In contrast, in Napue v. Illinois, the prosecution failed to disclose that it had promised the accused's accomplice, the principal State's witness, favorable treatment in exchange for his testimony. The Court held that, under those circumstances, "[h]ad the jury been apprised of the true facts, . . . it might well have concluded that [the accomplice] had fabricated testimony in order to curry the favor of the . . . State."360 U.S. at 270, 79 S.Ct. at 1177. See also Giglio v. UnitedStates, 405 U.S. 150, 154-55, 92 S.Ct. 763, 766,31 L.Ed.2d 104 (1972) (wherein the Court held that where "the Government's case depended almost entirely on [the accomplice's] testimony, . . . [his] credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it").
Furthermore, to the extent that Ms. Goutzoulis's credibility was an issue at trial, the defense successfully impugned her honesty by showing that she had lied twice about her knowledge of the events surrounding the homicide. Cross-examination of Ms. Goutzoulis highlighted the fact that in two statements given to Marshall County authorities shortly after the death of the victim, Ms. Goutzoulis had denied that she was present at the scene of the shooting. The jury was also presented with the evidence that Ms. Goutzoulis had been promised immunity for her testimony in the instant case.
A prosecutor who fails to divulge an agreement such as the one with Ms. Goutzoulis acts in flagrant disregard of the rights guaranteed the accused under the Due Process Clause of the Constitution and, in this case, in flagrant disregard of the ruling of the trial court. "When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." United States v.Agurs, 427 U.S. 97, 106, 96 S.Ct. 2392, 2399,49 L.Ed.2d 342 (1976) (quoted with approval in United States v.Bagley, 473 U.S. at 681, 105 S.Ct. at 3383). We condemn the actions of the Marshall County District Attorney's staff in failing to disclose the agreement with Ms. Goutzoulis. However, we find no reversible error because that failure to divulge did not prejudice this appellant.
 II
The appellant argues that the trial court erroneously charged the jury on the lesser included offense of reckless manslaughter and that it failed to charge on intentional or "heat-of-passion" manslaughter. This issue has not been preserved for review.
At the charge conference, defense counsel requested "that the lesser included *Page 469 
charges under murder be given, that those specifically be given of manslaughter and criminally negligent homicide." R. 533. The trial judge refused to charge on criminally negligent homicide, but stated that he would "give manslaughter." R. 533. Neither defense counsel nor the trial judge specified any particular subsection of the manslaughter statute. The trial judge instructed the jury on the elements of reckless manslaughter. Then, at the conclusion of the oral charge, when the judge inquired whether there were "[a]ny objections or exceptions by the defense," appellant's trial counsel replied, "None, Your Honor." R. 566.
Because counsel failed to object to the court's oral charge, there is nothing before this court to review. Holmes v.State, 497 So.2d 1149, 1153 (Ala.Cr.App. 1986); Rule 21.2, A.R.Crim.P. The trial judge was never made aware of defense counsel's dissatisfaction with the manslaughter charge. SeeStennet v. State, 564 So.2d 95, 97 (Ala.Cr.App. 1990) (when counsel failed to specify which subsection of assault statute on which he wanted court to charge, he did not properly preserve issue for review).
 III
The shooting of the victim in this case occurred in the early morning hours of July 12, 1990. Albertville police detective Edsel Whitten interviewed the appellant two days later, on July 14. On that occasion, Detective Whitten read the appellant his constitutional rights as set out in Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966). The appellant stated that he understood his rights and would talk with the detective. In that interview, appellant denied any involvement in the offense.
Eleven days later, on July 25, Detective Whitten interviewed the appellant again. He did not re-read the Miranda
rights to the appellant at that time. Instead, he ascertained that the appellant could read and write and that the appellant had completed one year of junior college. He then handed the appellant a form on which the Miranda warnings were printed, and watched as the appellant's eyes moved over the page. The appellant then stated that he understood his rights and he signed the waiver.
The appellant contends that his motion to suppress the July 25 statement should have been granted because he was not orally reinformed of his constitutional rights. This contention has no merit.
The Miranda warnings "may be given either orally or in writing. . . . Though giving the warnings in writing alone will suffice, it must be shown that the defendant could and did read the warnings and that he acknowledged an understanding of them." W. LaFave J. Israel, Criminal Procedure § 6.8(c) at 521 (1984) (footnotes omitted). See United Statesv. Sledge, 546 F.2d 1120, 1122 (4th Cir.), cert. denied,430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977); UnitedStates v. Bailey, 468 F.2d 652, 659-60 (5th Cir. 1972);State v. McNeal, 337 So.2d 178, 179 (La. 1976).
The appellant neither testified nor offered any witnesses at the hearing on the motion to suppress. He produced no evidence to contradict the State's showing that he was presented with a written Miranda form, read it, and voluntarily waived his constitutional rights. The State's evidence on this point was unrefuted. A review of the circumstances convinces us that constitutional procedures were followed and that the appellant's statement was admitted after a properMiranda predicate. See Magwood v. State,494 So.2d 124, 137-38 (Ala.Cr.App. 1985), affirmed, 494 So.2d 154
(Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599,93 L.Ed.2d 599 (1986).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 470