This Court has granted Barry Lewis Williams's petition for certiorari review of the judgment of the Court of Criminal Appeals, which affirmed, by an unpublished memorandum, Williams's conviction in the Lee County Circuit Court of first degree robbery. 602 So.2d 1234 (1992). Our review is limited to one issue: whether the State's failure to produce certain exculpatory evidence for the defense after the trial court had entered a discovery order pursuant to Rule 16, Ala.R.Cr.P., violated Williams's rights to a fair trial under Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Ex parte Brown, 548 So.2d 993 (Ala. 1989).
The pertinent facts of this dispute are as follows:
Joe Tolbert was robbed outside Flowers Bakery, his place of employment, in Opelika, Alabama, by four young black men. Tolbert testified at trial that one of the men wore a white shirt and blue jeans, and that this man placed a gun to his head and demanded that Tolbert give him his money. Tolbert also testified that another man, wearing a black raincoat and black hat, placed a knife at his throat; at the trial, Tolbert identified Williams as that second man. Both of these men, Tolbert said, rummaged through his pockets and removed his wallet, his keys, a lighter, and various other items. Another man, according to Tolbert, stood in the background and brandished a brick or cinder block. After the men had run away, Tolbert summoned the police; the police quickly captured near the scene a young man whom Tolbert identified as the brick wielder. Tolbert's supervisor at the bakery also recovered *Page 392 
a black hat; this hat was turned over to the police.
The police discovered the name "Joe Bean" written inside the hat. "Joe Bean" is the "street name" of Barry Williams's brother, Derrick Williams; for this reason, Derrick Williams's picture was included in a photographic lineup presented to Tolbert soon after the incident. At this photo lineup, Tolbert identified Derrick Williams as one of the robbers. Because of this identification, the Opelika police subsequently arrested Derrick Williams.
Eva Mae Williams, the mother of Derrick and Barry, later came to the police station and stated that it was not Derrick, but Barry, who had been present at the robbery. The police subsequently searched the home of Barry Williams and recovered a black raincoat that Tolbert later testified was worn by the man who placed the knife at his throat. Barry Williams was then arrested, and he was indicted by the grand jury for the offense of first degree robbery.
Before trial, Williams moved to compel the State to produce all exculpatory evidence pursuant to Brady and Rule 16.1(c), Ala.R.Cr.P.; the trial court granted the motion by entering a mandatory discovery order. When defense counsel went to the police station approximately a week before the trial, Detective E.D. Abernathy showed him the black raincoat recovered from Williams's home and showed him some photographs; these were not the photographs used in the lineup. Detective Abernathy failed to show him the black hat. Also, the police failed to provide defense counsel with a copy of a statement made by Tolbert to Detective Abernathy shortly after the incident, in which Tolbert described the man with the knife as wearing "camouflage" coveralls; Tolbert did not mention a black raincoat at all in this statement. It is undisputed that the State never produced the statement, the hat, or the photographs used in the lineup, before the day of the trial.
At trial, Williams moved to exclude the black hat and certain other State exhibits that had not been produced pursuant to the discovery order; the court initially granted this motion. The hat was admitted into evidence, however, after the defense had questioned a witness about it. Also, at trial Williams again asked the State to produce the lineup photographs; Williams particularly wanted to show the physical disparity between himself and his brother in order to illustrate that Tolbert did not actually have a clear idea as to the identity of the knife-wielding assailant. The State produced the photographs only after the defense had questioned Tolbert on cross-examination regarding the misidentification in the lineup.
Williams argues that the State's failure to produce the potentially exculpatory evidence violated Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In Brady, which dealt with the suppression of a confession of a codefendant in a murder case, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution."373 U.S. at 87, 83 S.Ct. at 1196-97, 10 L.Ed.2d at 218. The Brady decision was grounded on concerns for the right of the accused to be tried fairly and on the special role of the prosecutor in assuring that justice be administered. The Court elaborated on these concerns by stating:
 "Society wins not only when criminals are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. . . . A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with the standards of justice."
373 U.S. at 87-88, 83 S.Ct. at 1197, 10 L.Ed.2d at 218-19.
The State argues that Williams simply was not harmed by its actions; it contends that because Williams knew before trial that his brother had been arrested, he was not prejudiced by the delayed disclosure of the photographs, the hat, and the statement. *Page 393 
The State is correct in arguing that, in order to show aBrady violation, some prejudice to the defendant must have resulted from the nondisclosure of potentially exculpatory evidence. See Ex parte Raines, 429 So.2d 1111 (Ala. 1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 368 (1993);Breeding v. State, 523 So.2d 496 (Ala.Cr.App. 1987). The proper test in assessing whether the State's failure to produce such evidence upon motion of the defendant constitutes reversible error was enunciated in Ex parte Kennedy, 472 So.2d 1106
(Ala. 1985), cert. denied, 474 U.S. 975, 106 S.Ct. 340,88 L.Ed.2d 325 (1985). In Kennedy, this Court held that the defendant must demonstrate: 1) that the State suppressed the evidence; 2) that the evidence suppressed was favorable to the defendant or was exculpatory; and 3) that the evidence was material. 472 So.2d at 1110.
Here, the materiality of the photographs and the black hat is beyond question. Williams asked the State to produce the photographs so that he might illustrate the physical differences, apparent in the photographs, between himself and his brother and thus impeach Tolbert's anticipated identification at trial. Moreover, the black hat was of paramount importance and was referred to in the State's opening argument, for it provided the direct link to Williams: if the hat had not been found, the picture of Williams's brother would have not been included in the lineup, and the identity of Williams may not have become known. Williams had no way of knowing that this crucial piece of evidence was to be used against him at trial, because the detective failed to produce it when Williams's counsel visited the police station to inspect the State's evidence.
Perhaps the greatest amount of prejudice to Williams occurred because of the State's failure to turn over a copy of the statement made by Tolbert to Detective Abernathy concerning the incident. In that statement, Tolbert completely failed to mention a black raincoat, even though he admitted at trial that the raincoat would have been the most obvious identifying characteristic of the knife-wielding assailant. In fact, it appears that Tolbert never mentioned a black raincoat at all until such a coat was recovered from Williams's home. (Of course, the coat was not recovered until Williams's mother appeared at the police station and exonerated his brother Derrick, the man originally identified by Tolbert as the knife-wielding robber). The production of such an exculpatory piece of evidence before the trial would have greatly assisted the defense in attempting to impeach Tolbert at trial.
The State counters by asserting that Williams had the opportunity to cross-examine Tolbert at trial regarding these items of evidence; it also argues that nondisclosure that merely hampers the defendant's preparation for trial is an insufficient quantum of prejudice to constitute reversible error. It is true that the United States Supreme Court has endorsed such a view in United States v. Agurs, 427 U.S. 97,96 S.Ct 2392, 49 L.Ed.2d 342 (1976) (noting that knowledge of the prosecution's evidence, both incriminating and exculpatory, could always be said to assist the defense in preparing its case). Here, however, the failure to disclose the evidence totally prevented Williams's counsel from preparing portions of the defense, especially with respect to the inconsistencies between Tolbert's statement and his trial testimony. Counsel should not be forced to improvise at trial simply because the State has failed to comply with a mandatory court order.
Furthermore, this Court has previously rejected the argument now made by the State, that a defendant who has engaged in "thorough and sifting" cross-examination with respect to items not disclosed has suffered no prejudice. In Ex parte Brown,548 So.2d 993 (Ala. 1989), a case dealing with the State's failure to disclose a pair of pants allegedly worn by the defendant at the scene of the crime, this Court held:
 "Although the requirements of [Ex parte Kennedy, 472 So.2d 1106 (Ala. 1985),] were met, the State argues that the defendant was furnished the pants during the trial with sufficient time for him to engage the prosecutrix in effective cross-examination. We hold, however, that where [the] defendant has timely requested the production of exculpatory evidence that is material to his defense and the trial judge has ordered *Page 394 that such evidence be produced, Brady . . . and Rule 18.1, A.R.Crim.P. [now Rule 16.1], require that the evidence be produced at a reasonable time before trial."
548 So.2d at 995. (Emphasis added.) The Brown Court reversed the defendant's conviction and remanded the case for a new trial because the defendant had requested that the State produce the exculpatory evidence but the State had failed to produce it at a reasonable time before the trial. Because the situation here is virtually indistinguishable from that inBrown, we conclude that this judgment likewise must be reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL, and INGRAM, JJ., concur.